NOT FOR PUBLICATION

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ACHILLES CURBISON, et al.

                           Plaintiff,

        v.

UNITED STATES GOVERNMENT OF
NEW JERSEY, et al.,

                   Defendants.

HON. JEROME B. SIMANDLE

Civil No. 05-5280 (JBS)

**OPINION**

APPEARANCES:

Mr. Achilles Curbison
GC 4745
301 Morea Road
Frackville, PA 17932
      Plaintiff Pro Se

Rachel Castillo Rosser, Esq.
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
1515 Market Street
Ninth Floor
Philadelphia, PA 19102
     Attorney for Defendants The Bayer Corporation, its Chief
     Executive Officer, and the Individual Board of Directors of
     the Bayer Corporation

Christopher J. Christie
United States Attorney
     By:  Louis J. Bizzarri
        Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street, 4th Floor
Camden, New Jersey 08101
     Attorney for the United States of America

Amy B. Sunnergren, Esq.
QUINLAN, DUNNE & McCONNELL
16 N. Centre Street

Merchantville, NJ 08109
        Attorney for Defendant Timothy J.P. Quinlan, Esq.

**SIMANDLE,** District Judge:

        This matter comes before the court on four motions.
Defendants Bayer Corporation and its chief executive officer and
board of directors and the United States (along with certain
government employees) have each filed separate motions to dismiss
the complaint filed by Plaintiff Achilles Curbison ("Plaintiff")[1]
under Rules 12(b)(1), (2), (5) and (6), Fed. R. Civ. P.
Defendant Timothy J.P. Quinlan has filed a motion to dismiss, or
in the alternative, for summary judgment.  Finally, Plaintiff
Achilles Curbison has also filed a motion for judgment on the
pleadings.  In his complaint, Plaintiff alleges that the
defendants in this matter unlawfully seized and disposed of his
property for monetary gain, violated Plaintiffs' civil rights and
misrepresented themselves and the true facts to the courts
through a conspiracy.  For the reasons stated below: (1) the
motions to dismiss of Bayer Corporation and the United States
will be granted; (2) Defendant Quinlan's motion for summary
judgment will be granted; and (3) Plaintiff's motion for judgment
on the pleadings will be denied.

---

        [1] Plaintiff Curbison also names two other additional
Plaintiffs -- Neleh Company, LLC and Black Eagle, Inc. Plaintiff
Curbison is the sole owner of both entities.

I.   **BACKGROUND**

    A.   **The Original Action**

    Plaintiff seeks relief from alleged tortious actions committed by the various defendants related to a check forgery lawsuit filed by Bayer Corporation ("Bayer") in 2000. Specifically, on April 4, 2000, Bayer filed a civil complaint against Summit Bank, Levy & Levy, P.A. and William N. Levy, Esq. (who conducts his legal practice as Levy & Levy) stating that Summit negligently cashed a forged check issued by Bayer and deposited the funds into a bank account owned by Levy & Levy (the "Original Action"). Bayer sought a judgment against Summit Bank, Levy & Levy and William Levy personally for return of the stolen funds. As part of the Original Action Summit Bank filed a third-party complaint (the "Third Party Complaint") against Plaintiff Neleh Company, LLC, and others who received funds from the forged check seeking recovery of those funds.

    Plaintiff claims that as a result of this suit, agents of the Federal Bureau of Investigation, accompanied by officers and detectives of the Cherry Hill, New Jersey Police Department seized the real and business property of Neleh Company in August of 2000. (Complaint at ¶ 4.) Plaintiffs allege that the real and business property of Black Eagle and of Curbison was also confiscated. (Id.) Curbison states that the Third Party Complaint against Neleh Company was dismissed without prejudice

3

as to all defendants in June, 2001, but that the seized property has not been returned, nor have Plaintiffs been compensated for the seized property.  (Complaint at ¶ 5.)

**B.    Claims against Bayer and Certain Officers of Bayer**

Curbison alleges that, through the Original Action against Summit Bank, Defendants Bayer, its CEO, the Board of Directors and others not part of this motion (collectively, the "Bayer Defendants")[2] have caused an unlawful deprivation of Plaintiff's real and personal property and have irreversibly damaged his personal and business reputation.   Specifically, Plaintiff alleges that the Bayer Defendants (a) unlawfully seized and disposed of the property for monetary gain; (b) violated Plaintiff's civil rights; and (c) misrepresented themselves and the true facts to the courts by and through a conspiracy.

**C.    Claims Against the United States and Certain Federal Employees**

Plaintiff's claims against the United States, Phillip L. Buvia (retired FBI Special Agent), Robert J. Cleary (United States Attorney), Edward R. Davis (FBI agent), Michael Poulton (FBI) and Andrew Schiff (Assistant United States Attorney) and various John Does (collectively, the "Federal Defendants") arise

---

[2] The Complaint names as defendants the Bayer Corporation ("Bayer"), the "Unkonwn [sic] Unnamded [sic] Chief Executive Officer/President of the Bayer Corp." ("CEO"), and the "Unknown Unnamed Individual Board of Directors of the Bayer Corp." ("Board of Directors").

from an investigation conducted by the FBI into Plaintiff's
involvement with the check forgery incident and ultimately to the
seizure of Plaintiff's property purchased with proceeds gained
through his participation in the scheme.  Specifically, in
February of 2000, the FBI was investigating Plaintiff for his
participation in a $1.2 million counterfeit check drawn on a
Bayer bank account.  The investigation revealed that a Thaddeus
E. Watley negotiated the counterfeit check and then wired
$700,000 of the proceeds to an intermediary and then to
Plaintiff.  The FBI then traced the illegally obtained funds to
the purchase of a home and two vehicles and Plaintiff later
acknowledged that he purchased the home and two vehicles with
these funds.  (Federal Defendants' Br. at 3.)

On August 3, 2000, the United States filed a Verified
Complaint for Forfeiture in Rem in United States District Court
for the District of New Jersey against the home and seized the
two vehicles pursuant to an authorized search warrant. According
to the Federal Defendants, process was fully issued in the
action, notice of the forfeiture action was published in the
Courier Post newspaper and, on July 10, 2001, the district court
entered partial default judgment and final order of forfeiture
transferring all right, title and interest in the real property
and vehicles to the United States.

Plaintiff's amended complaint ("Amended Complaint") states

an assortment of state and federal civil rights violations and tort claims.  Specifically, Plaintiff alleges that the Federal Defendants (1) committed an unlawful search and seizure; (2) were part of a conspiracy to execute an unlawful search and seizure; (3) unlawfully forfeited Plaintiff's property; (4) participated in a conspiracy to execute an unlawful forfeiture; (5) obstructed justice and conspired to obstruct justice; and (6) intentionally inflicted emotional pain and distress upon Plaintiff (and conspired to do so.)

**D.   Claims Against Timothy Quinlan, Esq.**

Plaintiff's claims against Timothy Quinlan center on Quinlan's acceptance of a summons and complaint on behalf of Neleh Company, LLC in the Original Action.  According to Quinlan and New Jersey State Business Gateway Service Corporate and Business Information Reporting, Quinlan is listed with the State of New Jersey as the registered agent for Neleh Company. (Quinlan Br. at 2 and Ex. A.)  On June 1, 2001, the summons and complaint in the Original Action were served upon Quinlan. Quinlan claims that, upon receiving the Complaint, he forwarded the complaint to Neleh Company through a company that provides corporate services for attorneys.  Plaintiff alleges that Defendant Quinlan is liable for "fraudulent misrepresentation" and "obstruction of justice" related to Quinlan's accepted a summons and complaint without authority. (Complaint at I, N.)

6

### E.    __Procedural History__

Plaintiffs first filed this complaint on November 16, 2005, which was dismissed without prejudice on December 22, 2005.  That order was vacated on December 29, 2005 and Plaintiff filed the Amended Complaint on January 27, 2006. [Docket Item No. 5.]  The Bayer Defendants filed this motion to dismiss on April 6, 2006 to which Plaintiff filed opposition on April 24, 2006. [Docket Item Nos. 17, 18.]   Defendant Quinlan and the Federal Defendants filed their motions to dismiss on May 4, 2006 and July 11, 2006, respectively. [Docket Item No. 20, 28.]  Plaintiff filed his response in Opposition to these motions on May 12 and July 24, 2006, respectively. [Docket Item No. 21, 29.]  Finally, Plaintiff filed a motion for judgment on the pleadings and a motion for leave to file a counterclaim on June 21, 2006, to which the Bayer Corporation replied on July 6, 2006.  [Docket Item Nos. 22, 23, 26, 26.][3]

---

[3] On June 21, 2006, Plaintiff also filed a "Motion for Leave of Court to File Counterclaim Pursuant to Fed. R. Civ. P. 13(e)(f)." [Docket Item No. 23.] Except for the Bayer Defendants, none of Defendants filed opposition to Plaintiff's motion.  The proposed pleading mentions the adding of claims against Summit Bank, William N. Levy, Esq., and Levy & Levy, P.A., Rotan Lee, Esq. and the Estate of Rotan Lee, none of whom is a party to this case.

The Court assumes that Plaintiff seeks leave of court to make a counterclaim that matured after the pleadings (Fed. R. Civ. P. 13)(e)) or to join additional parties to this action (Fed. R. Civ. P. 13(h)).  In either case, Plaintiff's motion must be denied as motions for leave to bring a counterclaim or cross-claim cannot be brought by the plaintiff.  See 6 Charles Alan

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

The Defendants' motions move to dismiss on various grounds
including Rules 12(b)(1), (2), (5) and (6), Fed. R. Civ. P.  A
motion made under Rule 12(b)(1) and (2) argues that the claims
should be dismissed because the court lacks either subject matter
jurisdiction (Rule 12(b)(1)) or personal jurisdiction over the
defendant (Rule 12(b)(2)).  A defendant moving under Rule
12(b)(5) argues that dismissal is warranted because plaintiff
failed to properly serve defendant.  A motion under Rule 12(b)(6)

---

Wright & Arthur R. Miller, Federal Practice and Procedure § 1403
(3d ed. 2004)("Any claim that defendant has against plaintiff or
that a third-party defendant has against the third-party
plaintiff may be asserted as a counterclaim . . . [and under Rule
13(h)] additional parties may be brought in . . . for purposes of
fully disposing of any counterclaim or cross-claim in the
action.") Rather than a motion for leave under Rule 13(e) or (h),
Plaintiff must file a motion for leave to amend his Amended
Complaint under Fed. R. Civ. P. 15(a).  Leave to amend "shall be
freely given when justice so requires," Fed. R. Civ. P. 15(a),
and will be denied only (a) "if a plaintiff's delay in seeking
amendment is undue, motivated by bad faith, or prejudicial" to
the defendant or (b) if the amendment would be futile (i.e., the
amendment fails to state a cause of action). Adams v. Gould,
Inc., 739 F.2d 858, 864 (3d Cir. 1984); see also Massarsky v.
General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).  Thus,
this Court will deny Plaintiff's motion under Rule 13(e), (h)
without prejudice to Plaintiff's filing of a motion to amend his
complaint in compliance with Rule 15(a) and the relevant case law
within 20 days of the entry of the accompanying Order.  Plaintiff
must attach a copy of his proposed Second Amended Complaint to
his motion, as required by L. Civ. R. 7.1(f).  Further, any
proposed second amended complaint cannot contain claims already
dismissed in this opinion and accompanying order, and it must
state the basis for this Court's subject matter jurisdiction, and
otherwise comply with the Federal Rules of Civil Procedure.

is more complicated as this motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The question before the court is not whether plaintiff will ultimately prevail; rather, it is whether he can prove any set of facts in support of his claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## B.  **Motion for Summary Judgment**

Under Rule 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citations omitted).  It is true that in deciding whether there exists a

9

disputed issue of material fact, the Court must view the facts asserted by the non-moving party in the light most favorable to that party.  See Aman v. Cort Furniture Corp. 85 F.3d 1074, 1080-81 (3d Cir. 1996).  However, a non-moving party may not rest upon mere allegations, general denials, or vague statements.  Bixler v. Central Penn. Teamsters Health and Welfare Fund, 12 F.3d 1292, 1302 (3d Cir. 1993).

## III. DISCUSSION

### A.   Preliminary Matters

#### 1.   Representation of Neleh Company, LLC and Black Eagle, Inc.

Because Plaintiffs Neleh Company and Black Eagle are represented by pro se plaintiff Achilles Curbison, and not by licensed counsel, the Amended Complaint must be dismissed as to those two plaintiffs.  In Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993), the Supreme Court held that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."  In Rowland the Court further held that "the rationale for that rule applies equally to all artificial entities."  Id.[4]  Thus, Plaintiffs

_____

[4] The New Jersey Court Rules codify this provision explicitly:

Except as otherwise provided . . . a business entity other than a sole proprietor shall neither appear nor file any paper in any action in any court of this State except through an attorney authorized to practice in this State.

10

Neleh Company, LLC, a limited liability corporation, and Black Eagle, Inc., a corporation, must be dismissed from the case due to their lack of an appearance through an attorney.

> **2.   The Federal Defendants' Application to Extend Time to Answer under Local Civ. Rule 6.1(b)**

The Court must determine whether it will consider the Federal Defendants' motion to dismiss filed on July 11, 2006 in light of the fact that some of the Federal Defendants appear to have been served as early as March 1, 2006 and March 24, 2006. [Docket Item No. 15.]  On June 26, 2006, the Federal Defendants filed an application for an extension of time to answer, move or otherwise respond under Local Civil Rule 6.1(b).[5]  In its scant application, the Federal Defendants represent only that (1) they have sought no previous extension and (2) request an extension of fifteen days in which to answer Plaintiff's Complaint (until July 1, 2006). [Docket Item No. 24.]   Plaintiff objected to the Federal Defendants' application arguing that an extension is inappropriate because the Federal Defendants have waited until

---

Pressler, <u>Current N.J. Court Rules</u>, R. 1:21-1(c)(2006).

[5]  Local Civ. R. 6.1(b) states, in pertinent part

The time within which to answer or reply may, before its first expiration and with or without notice, be extended once for a period not to exceed 15 days on order granted by the Clerk.  Any other proposed extension of time must be presented to the Court for consideration.

the expiration of the originally prescribed period to make their request and have failed to explain their non-compliance or inability to respond in a timely fashion. [Docket Item No. 27.]

The Federal Defendants' application does not comply with Local Civ. R. 6.1(b)'s "breathing room" rule and thus the Federal Defendants are not entitled to an automatic 15-day extension granted by the Clerk.  This is because the Federal Defendants' application (1) was not filed before the first expiration and (2) did not disclose the date service of process was effected as required by Local Civ. R. 6.1(a).  See Lite, N.J. Fed. Practice Rules, Comment 3 to L. Civ. R. 6.1 (Gann)("So long as application is made in proper form, see L. Civ. R. 6.1(a), before the time to answer or reply has expired, the Clerk will grant the extension . . . .")  However, the Court will consider the application to be made under the second sentence of L. Civ. R. 6.1(b) and finds that it is in the interest of justice to grant the Federal Defendants' application for an extension to file their answer or reply.  The Court notes too that the Federal Defendants complied with the July 11, 2006 deadline they established in their Local Rule 6.1(b) application for which they would reply to or answer Plaintiff's Complaint.  This extension causes no prejudice to Plaintiff, who has also received ample time to oppose these motions upon the merits.  As such, the Court will consider the Federal Defendants' motion to dismiss as timely filed.

**B.**   **The Bayer Defendants' Motion to Dismiss**

    **1.**   **Bayer's Motion will be Granted because Plaintiff Lacks Standing to Sue the Bayer Defendants.**

Defendant Bayer argues first that, because Plaintiff's injuries (the seizure of Plaintiff's real property and vehicles) were related to the Third Party Complaint initiated by Summit Bank and not by Bayer in the Original Action, Plaintiff's injuries are not causally connected to the Bayer Defendants actions.  According to the Bayer Defendants, because there is no causal connection, Plaintiff lacks standing to sue the Bayer Defendants and Plaintiff's Amended Complaint must be dismissed as to the Bayer Defendants under Rule 12(b)(1), Fed. R. Civ. P.

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks dismissal due to the lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Before a federal court can consider the merits of a legal claim, "the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."  Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).  Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties.  U.S. CONST. art. III, § 2.  To satisfy Article III's standing requirements, a plaintiff must allege:

    (1) [an] injury in fact . . . ; (2) a causal connection between the injury and the conduct complained of; and (3) [that] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 290-91
(3d Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S.
555, 560-61 (1992)); see also Steel Co. v. Citizens for a Better
Environment, 523 U.S. 83, 102-104 (1998)(the requested relief
must be likely to "redress the alleged injury.") Specifically,
the "case or controversy" limitation of Art. III "requires that a
federal court act only to redress injury that fairly can be
traced to the challenged action of the defendant, and not injury
that results from the independent action of some third party not
before the court." Simon v. Eastern Kentucky Welfare Rights
Organization, 426 U.S. 26, 41-42 (1976).   The plaintiff bears
the burden of establishing standing. See Storino v. Borough of
Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003).

     Plaintiff has failed to satisfy this burden.  Although,
Plaintiff alleges that his personal property (as well as the
property of Neleh Company and Black Eagle) was unlawfully seized
as a result of the actions of the Bayer Defendants, the seizure
and subsequent damaged allegedly suffered by Plaintiff was not
caused by the Bayer Defendants' actions.  Plaintiff was not named
by Bayer in the Original Action and at no time did Bayer ever
make a claim against Plaintiff.  Rather, Plaintiffs were brought
in as third-party defendants in the Original Action against
Summit Bank.  If Mr. Curbison or his business entity was found to
be liable for that action, or subject to execution as he alleges,

14

any such liability or execution was not attributable to Bayer's
claims in the Original Action.  Plaintiffs may not ascribe the
injury that resulted from the "independent action of [a] third
party not before the court" to the Bayer Defendants.  Because
Plaintiff cannot demonstrate that Bayer's act of bringing the
Original Action is causally related to any harm suffered by
Plaintiff, Plaintiff lacks standing to sue the Bayer Defendants
and thus, the Bayer Defendants' motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(1) will be granted.

> ### 2.   **Bayer's Motion will be Granted as to its CEO and Board of Directors because these Individuals were not Properly Served**

Even if this Court had not concluded that Plaintiff lacks
standing to sue any of the Bayer Defendants, the Bayer
Defendants' motion to dismiss should be granted as to Bayer's CEO
and Board of Directors because Plaintiff failed to effectively
serve process on these defendants.[6]  Service of process must be
accomplished in such a way as to "afford notice reasonably
calculated . . . to apprise interested parties of the pendency of
the action and afford them an opportunity to present their
objections."  Jameson v. Great Atlantic and Pacific Tea Co., 363
N.J. Super. 419, 425 (App. Div. 2003).  The party asserting the
validity of service bears the burden of proving that service was

---

[6] Counts A, B, C, D, E, F, G, H, K, M, N, O, P and Q are
directed towards Bayer's CEO and Board of Directors although none
of them were individually named.

valid, see Grand Entm't Group v. Star Media Sales, 988 F.2d 476, 488 (3d Cir. 1993), and under Rule 12(b)(5), the district court may dismiss a case due to the insufficiency of service.  See Fed. R. Civ. P. 12(b)(5).  Because Bayer's CEO and Board of Directors are individuals, Plaintiff bears the burden of proving that service was proper under Rule 4(e), Fed. R. Civ. P.  In the United States, service upon an individual from whom a waiver has not been obtained and filed may be effected in any judicial district of the United States

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. Rule 4(e).  In New Jersey, service of process on an individual may be accomplished by

> causing the summons and complaint to be personally served within [New Jersey] . . . as follows: (1) Upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode . . . *or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf*.

Pressler, Current N.J. Court Rules, R. 4:4-4(1)(2006)(emphasis

added).  If service of process is made to "a person authorized by appointment or by law to receive services of process" on an individual's behalf, the plaintiff bears the burden of proof "that an alleged agent has specific authority, express or implied, for the receipt of process."  <u>Zoning Bd. of Adjustment of Sparta Tp. v. Service Elec. Cable Television of New Jersey, Inc.</u>, 198 N.J. Super. 370, 377 (App. Div. 1985).[7]

In this case, Plaintiff attempted to service Bayer's CEO and Board of Directors by delivering a copy of the summons and complaint on Douglas A. Pearson.  (Declaration of Douglas A. Pearson ¶¶ 3, 4; Bayer's Br. at Ex. B.)  However, according to Pearson's declaration, Pearson is authorized to accept service on behalf of Bayer Corporation only, and <u>not</u> on behalf of the CEO and members of the Board of Directors.  (<u>Id.</u> ¶¶ 3, 4.)  According to Pearson, Pearson specifically informed the process server of this fact. (<u>Id.</u> ¶¶ 5.)  Moreover, according to Bayer and undisputed by Plaintiff, Pearson is not a person authorized by appointment or by law to accept service on behalf of either Bayer's CEO or Board of Directors.  Curbison then, cannot show

---

[7]  Moreover, in <u>Local 617, Etc. v. Hudson Bergen Trucking Co.</u>, 182 N.J. Super. 16, 20 (App. Div. 1981), the New Jersey Appellate Division, adopting the position of certain federal courts, held that "in the absence of an express agreement between the agent and principal or in the absence of circumstances which clearly show that such an agreement was intended by the parties, authorization to accept service of process on behalf of a corporation or an individual would not be deemed to exist."

that there is an express or implied agreement between the CEO and
Pearson or the Board of Directors and Pearson.  Because Plaintiff
failed to properly serve either the CEO or Board of Directors in
a way consistent with Fed R. Civ. P. 4(e), the Bayer Defendants'
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) will be
granted and the complaint dismissed as to Bayer's CEO and Board
of Directors.

### C.    **The Federal Defendants' Motion to Dismiss**

The Federal Defendants argue that Plaintiff's individual
claims against the Federal Defendants fail because they are
either untimely, federal agents are immune to the causes of
action Plaintiff brings, this Court lacks subject matter
jurisdiction over the claims or Plaintiff has failed to state a
claim upon which relief can be granted.  Although Plaintiff does
not specifically reference the applicable statutes or case law
that underlie his claims, it appears that Plaintiff's claim
damages arising (1) under Bivens v. Six Unknown Named Agents of
Federal Bureau of Narcotics, 403 U.S. 388 (1971) for damages
related to a violation of Plaintiff's Fourth and Fifth Amendment
Rights, (2) state common law torts, and (3) the Federal Tort
Claims Act, 28 U.S.C. §§ 1346(b) & 2671, et seq.

### 1.    **Plaintiff's _Bivens_ Claims**

Plaintiff's claims against Special Agents Buvia and Poulton,
FBI Agent Davis, Assistant U.S. Attorney Schiff and the John Doe

18

FBI Agents for violation of Plaintiff's Fourth and Fifth
Amendment, while not artfully drafted, may, in the light most
favorable to Plaintiff, be construed as a claim under Bivens.
Under Bivens, the Supreme Court held that a violation of the
Fourth Amendment by a federal agent acting under color of his
authority gives rise to a cause of action against that agent,
individually, for damages.  403 U.S. at 392-94.  Later, the
Supreme Court extended Bivens claims arising under the equal
protection clause of the Fifth Amendment.  See Davis v. Passman,
442 U.S. 228 (1979).

     The Supreme Court in Bivens did not address the statute of
limitations in a Bivens cause of action.  However, the Third
Circuit has held that "[b]ecause Congress has not established a
federal statute of limitations for Bivens actions, [the district
court] must look to the most analogous state statute of
limitations."  Napier v. Thirty or More Unidentified Federal
Agents, 855 F.2d 1080, 1088 (3d Cir. 1988) (citing Wilson v.
Garcia, 471 U.S. 261-67 (1985)).  The most analogous state
statute of limitation is the state's statute of limitations for
personal injury actions.  Tavares v. Myers, Slip Copy, 2006 WL
1644776 at *4 n. 8 (D.N.J. June 8, 2006)(citing Wilson v. Garcia,
471 U.S. 261, 280 (1985)).  New Jersey's has a two year statute
of limitations period on personal injury actions, N.J. Stat. Ann.
§ 2A:14-2, and it is this two-year limitations period that

19

applies to Plaintiff's <u>Bivens</u> action. <u>See</u> <u>Cito v. Bridgewater</u>
<u>Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989).

Here, Plaintiff's <u>Bivens</u> claims are barred by the two-year
statute of limitations. Federal authorities seized Plaintiff's
real property and vehicles in August of 2000 and the District
Court for the District of New Jersey entered its final forfeiture
order in July of 2001. Assuming that the later date of July 2001
is the appropriate date for analyzing the statute of limitation
issue, Plaintiff's claims (which were filed in January of 2006)
were untimely. According to New Jersey law, Plaintiff would have
had to bring his claim by July of 2003 at the very latest in
order to satisfy the statute of limitations. Thus, this Court
will dismiss all of Plaintiff's <u>Bivens</u> claims[8] under Rule
12(b)(1) for lack of subject matter jurisdiction.

### 2.   Plaintiff's State Common Law Tort Claim

In Count P of his Complaint, Plaintiff seeks damages from
the individual Federal Defendants for the common law tort of
intentional infliction of emotional distress stemming from the
FBI's seizure of his property during the August 4, 2000 raid.
However, as with Plaintiff's <u>Bivens</u> claims, this claim is time
barred. N.J. Stat. Ann. 2A:14-2 ("Every action at law for an
injury to the person caused by the wrongful act . . . of any

---

[8]   Such claims relate to Count J (violation of the Fourth
Amendment) and Counts L and N (violation of other of Plaintiff's
constitutional rights) of Plaintiff's Complaint.

person within this State shall be commenced within two years next
after the cause of any such action shall have accrued . . . .);
see also Maldonado v. Leeds, 374 N.J. Super. 523, 530 (App. Div.
2005)(N.J. Stat. Ann. 2A:14-2 requires that a personal injury
claim for emotional distress be brought within two years of the
accrual of the cause of action.)  Thus, because it was brought
after August 4, 2002 (such as this claim which was brought in
January 2006), Plaintiff's claim is untimely and Count P will be
dismissed.

> **3.   Plaintiff's Claims Against the United States under
> the Federal Tort Claims Act.**

In his Amended Complaint, Plaintiff makes a number of claims
against the United States.  Although not specified in the Amended
Complaint, the Court will construe these claims under the Federal
Tort Claims Act (the "FTCA").  Under the FTCA, the sovereign
immunity of the United States is waived for certain torts
committed by Federal employees.  See 28 U.S.C. § 1346(b).  A
claim under the FTCA must be (1) against the United States, (2)
for money damages, (3) "for injury or loss of property, or
personal injury or death," (4) caused by the negligent or
wrongful act or omission of any employee of the United States,
(5) "while acting within the scope of his office or employment,"
(6) "under circumstances where the United States, if a private
person, would be liable to the claimant in accordance with the
law of the place where the act or omission occurred."  Id.   In

addition to satisfying these six elements, a plaintiff's claim
under the FTCA must comply with the applicable statute of
limitations.  Under federal law, tort actions against the United
States must be:

> [P]resented in writing to the appropriate Federal
> agency within two years after such claim accrues or
> unless action is begun within six months after the date
> of mailing, by certified or registered mail, of notice
> of final denial of the claim by the agency to which it
> was presented.

28 U.S.C. § 2401(b).  "The time limits expressed in this statute
are jurisdictional and cannot be waived."  Shah v. Rhinehart, No.
04-259, 2006 U.S. Dist. LEXIS 44052, at * 22-23 (W.D. Pa. 2006)
(citing In re Franklin Savings Corp., 385 F.3d 1279, 1287 (10th
Cir. 2004)).  A district court lacks subject matter jurisdiction
when a plaintiff fails to meet timing requirements in § 2401(b).
In re Franklin Savings Corp., 385 F.3d at 1287.

In the present case, Plaintiff's claim is time barred as
Plaintiff has failed to meet time requirements of § 2401(b).
Plaintiff did not file an administrative claim with the FBI
relating to any of his claims alleged in the Amended Complaint
nor did he allege that he satisfied this jurisdictional element.
Because Plaintiff's cause of action is untimely, this Court lacks
subject matter jurisdiction.  Thus, Counts J, L, N and P will be
dismissed.

####        4.   Plaintiff's Conspiracy Claims against the Federal Defendants

In Counts K, M, O and Q, Plaintiff brings a number of claims for civil conspiracy.  Specifically, Count K claims conspiracy related to an unlawful search and seizure, Count M claims conspiracy related to unlawful forfeiture, Count O claims conspiracy to obstruct justice and Count Q claims conspiracy to inflict emotional pain and distress.

A claim for civil conspiracy requires a separate underlying tort as a predicate for liability.  See In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999)("[O]ne cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant . . . [rather] actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.")(internal quotation omitted).  In other words, the court cannot find civil conspiracy when no underlying tort exists. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000)("[a] verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to te underlying tort's existence.")

In this case, in Sections III(c), supra, this Court  held that Plaintiff's claims against the Federal Defendants for the

23

underlying torts must be dismissed.  Because this Court dismissed
the underlying tort claims (Counts J, L, N and P), the Court must
likewise dismiss the civil conspiracy claims (Counts K, M, O and
Q).  Plaintiff can prove no set of facts in support of his claims
that would entitle him to relief and thus, his claims must be
dismissed for failure to state a claim upon which relief can be
granted.

####    D.   **Defendant Quinlan's Motion for Summary Judgment**

In his Amended Complaint, Plaintiff brings two claims
against Quinlan.  First, Plaintiff alleges fraudulent
misrepresentation, in that beginning on June 1, 2001, Quinlan
"knowingly, deliberately and with malicious intent fraudulently
misrepresented himself . . . as an official and authorized agent
of" Neleh Company, LLC.  (Amended Compl. Count I, ¶¶ 183.)  In
addition, Plaintiff claims that Quinlan "unlawfully intercepted,
and retained, court documents belonging to Plaintiff" and that
Quinlan is "unknown to Plaintiff" and has never been an official,
or authorized agent of the Neleh Company, LLC.  (Id. at ¶¶ 183-
85.)  According to Plaintiff, by accepting and retaining certain
legal documents belonging to Plaintiff, Quinlan "has violated
Plaintiff[]'s . . . constitutional rights to, inter alia, access
to the courts, the right to confront their accusers, and
[Plaintiff's] right to secure witnesses . . . ."  (Id. at ¶ 186.)
Plaintiff also alleges that Quinlan is liable for tort of

24

obstruction of justice because Quinlan "impersonated an officer and authorized agent of the Neleh Company, LLC" when he accepted service of a complaint in the Original Action. (Amended Compl. Count N, ¶ 440-42.) Such actions on the part of Quinlan, according to Plaintiff, "deprived Plaintiff[] of timely, proper notice of the complaint [in the Original Action and] den[ied] the Plaintiff[] the ability, and opportunity to prepare...a proper defense . . . ." (Id. at ¶ 444.)

In his motion, Quinlan argues that Plaintiff has failed to state a cause of action against Quinlan because (1) Neleh Company had selected Quinlan as its registered agent when it incorporated in New Jersey and (2) Quinlin in fact did provide notice of the complaint in the Original Action to Neleh Company in a timely manner.[9] In his opposition brief, Plaintiff argues that Quinlan has failed to present any documentation to support his claim that he is Neleh Company's registered agent or an authorized agent of Neleh Company. If Quinlan had been Neleh Company's registered

---

[9] Because this Court will look to matters outside the pleadings that were submitted by Quinlan (namely Quinlan's Certification as well as certain public records from the State of New Jersey), the Court will review Plaintiff's motion as if were a motion for summary judgment. See Fed. R. Civ. P. 12(b) ("If, on a motion asserting [12(b)(6)] to dismiss for failure of th pleadings to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .") Plaintiff had the opportunity to rebut the documentary evidence relied upon by Quinlan in his motion, as discussed below.

agent, according to Plaintiff, he "would have known that [Plaintiff] is and was the sole proprietor and incorporator as well as the address and notified [Plaintiff] of lawsuit [sic]." (Pl.'s Br. in Opp. to Quinlan's Summary Judgment Motion.) Finally, Plaintiff alleges that Quinlan has failed to argue that summary judgment is appropriate as to Plaintiff's obstruction of justice claim.

Under the New Jersey Business Corporations Act ("NJBCA"), a company that is incorporating in New Jersey must maintain a registered office and a registered agent in the state.  N.J. Stat. Ann. 14A:4-1(1).  A registered agent may perform task for the corporation such as accepting service of process.  See Fed. R. Civ. P. 4(h)(1); N.J. Stat. Ann. 14A:4-2(1)("Every registered agent shall be an agent of the corporation which has appointed him, upon who process against the corporation may be served.")

Quinlan provides the Court with a certification in which he certifies that he is the designated agent within the State of New Jersey for Neleh Company, LLC.  (Certification of Timothy J.P. Quinlan, Esq. ¶ 4, Quinlin's Br. at Ex. B.)  In addition, Quinlan provided the Court with a recent Business Entity Status Report for Neleh Company, LLC which states that he is the registered agent (and lists his business address).  (Id. at Ex. A.)  Thus, according to Quinlan, when Neleh Corporation incorporated in January of 2000, it designated Quinlan as its registered agent.

26

In his opposition papers, Plaintiff did not dispute these facts
or rebut Quinlan's evidence.  As such, there is no dispute of
fact that, because he was the registered agent of Neleh Company
from January of 2000 until the present, Quinlan did not
fraudulently misrepresent himself as an official or authorized
agent Neleh.  Moreover, because Quinlan was authorized by the
NJBCA to receive service of process on behalf of Neleh Company,
he did not "unlawfully intercept[], and retain[], court documents
belonging to Plaintiff."  As such, Quinlan's motion for summary
judgment as to Plaintiff's fraudulent misrepresentation claim
will be granted and Count I will be dismissed.

Although it is clear that Quinlan was authorized to accept
service on behalf of Neleh (as its registered agent), Plaintiff
also argues that Quinlan is liable for the tort of obstruction of
justice for "impersonat[ing] an officer and authorized agent of
the Neleh Company, LLC" when he accepted service of a complaint
in the Original Action and "depriv[ing] Plaintiff[] of timely,
proper notice of the complaint [in the Original Action and]
den[ied] the Plaintiff[] the ability, and opportunity to
prepare...a proper defense . . . ."  (Amended Compl. Count N, ¶
440-42, 444.)  It is clear from the discussion <u>supra</u> that Quinlan
was not "impersonat[ing] an officer and authorized agent" of
Neleh but instead was the company's registered agent.  Moreover,
according to his certification, upon being served with the

27

complaint in the Original Action, Quinlan, as is his practice, immediately forwarded it to an attorney serving company who is responsible for forwarding the documents to the company. (Quinlan Cert. ¶¶ 6-10.)  Moreover, Quinlan certified that the attorney servicing company he used told him that "they had record of receiving the complaint and they forwarded it to the attorneys for Neleh [Company], LLC."  (Id. ¶ 11.)  Again, Plaintiff fails to dispute these facts.  As such, because Quinlan did not deprive Plaintiff of timely, proper notice of the complaint or deny him the opportunity to prepare a proper defense, this Court will grant Quinlan's motion for summary judgment as to Plaintiff's obstruction of justice claim and Count N of the Amended Complaint will be dismissed.

### E.   **Plaintiff's Motion for Judgment on the Pleadings**

On June 21, 2006, Plaintiff filed a motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P.[10] [Docket Item No. 22.] "The Rule 12(c) judgment on the pleadings procedure primarily is addressed to . . . the function of disposing of cases on the basis of the substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings."  5C Charles Alan Wright & Arthur R. Miller, Federal

---

[10] Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Practice and Procedure § 1367 (3d ed. 2004).  Rule 12(c) states
that "after the pleadings are closed but within such time as not
to delay the trial, any party may move for judgment on the
pleadings."  Fed. R. Civ. P. 12(c).

Here, Plaintiff argues that (1) Plaintiff filed a Complaint
on January 27, 2006 and the various defendants were served
between March 1, 2006 and March 24, 2006 and (2) Defendants
failed to file an anser to Plaintiff's complaint within the
required 60 days.  (Pl.'s Mot. for Judgment on Pleadings ¶¶ 2-4.)
Thus, Plaintiff appears to argue that this Court should enter
judgment on behalf of Plaintiff do to Defendants' failure to
timely answer Plaintiff's summons and Complaint.[11]  This Court
will deny Plaintiff's motion because, at the time of Plaintiff's
motion, the pleadings were not closed.[12]

## IV.   CONCLUSION

For the reasons expressed in this Opinion (1) the motions to
dismiss of the Bayer Defendants and the Federal Defendants will
be granted; (2) Defendant Quinlan's motion for summary judgment
will be granted; and (3) Plaintiff's motion for judgment on the
pleadings will be denied.  The accompanying Order will be

---

[11] The Court notes, as they have pointed out in their
opposition to Plaintiff's motion, that the Bayer Defendants
timely responded to the Complaint with a motion to dismiss on or
about April 6, 2006. Thus, they are improperly named as a party
in Plaintiff's motion.

[12] See Section III.A.2, supra for discussion.

entered.

**December 7, 2006**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         U.S. District Judge